# In the United States Court of Federal Claims

No. 19-691C

(Filed: January 15, 2021)

|  |  |
|---|---|
| **SARRO & ASSOCIATES, INC.,** | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Patrick R. Quigley*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Plaintiff.

*Igor Helman*, United States Department of Justice, Civil Division, Washington, DC, for Defendant.  With him on the briefs were *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, and *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

## **OPINION AND ORDER**

***SOLOMSON*, Judge.**

      This case arises under a contract between Plaintiff, Sarro & Associates, Inc. ("Sarro"), and Defendant, the United States, acting by and through the United States Geological Survey ("USGS" or the "Agency"), for the installation of a generator at the USGS facility in Flagstaff, Arizona (the "City").  During the performance of that contract, Sarro incurred unanticipated, increased costs complying with the City's permitting requirements, which necessitated Sarro having to reperform substantial parts of the contract.  Sarro submitted a claim to the USGS contracting officer ("CO") for an equitable adjustment pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 7103, which the CO denied.  Sarro now brings claims in this Court against the United States for damages arising from an alleged breach of the implied duty to disclose superior knowledge, breach of contract, cardinal change, and breach of the implied duty of good faith and fair dealing.  The government moved to dismiss Sarro's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of

Federal Claims ("RCFC") for, respectively, lack of jurisdiction and failure to state a claim upon which relief may be granted. For the reasons explained below, the Court grants the government's motion to dismiss Plaintiff's amended complaint – the first count for lack of jurisdiction and the three remaining counts for failure to state a claim – in its entirety.

## I.   Factual And Legal Background[1]

### A.   The Contract

On September 12, 2016, USGS[2] awarded a firm-fixed-price contract, No. G16PX01471, to Sarro, a Colorado-based small business that specializes in installing electrical and mechanical systems. ECF No. 16 ("Am. Compl.") ¶¶ 1–3, 13; *see* ECF No. 23-1 ("Def. App.") at 24–25. The contract required Sarro to install a permanent 130Kw diesel generator at USGS's astrogeology facility in Flagstaff, Arizona and provide all essential electrical connections. Am. Compl. ¶¶ 6, 14; Def. App. at 2. The statement of work ("SOW") delineated technical specifications for the generator, installation and construction requirements, and various work instructions. Def. App. at 13–16. The SOW expressly provided that the City "as owner of land and building requires review and approval of all drawings/specs" and that "[u]pon completion of the work, the Contractor shall deliver an original marked set of As-Built Drawings." *Id.* at 15–16.

The contract also contained numerous standard clauses and provisions, *id.* at 3–13, including Federal Acquisition Regulation ("FAR") 52.236-7, Permits and Responsibilities ("P&R clause"), which provides, in relevant part:

> The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary

---

[1] For the purpose of resolving the pending motion to dismiss, the facts alleged in Plaintiff's amended complaint are assumed to be true, and do not constitute factual findings by the Court. *See*, *infra*, Section II. The Court also relies upon exhibits appended to Defendant's motion to dismiss and Plaintiff's response brief, which contain documents that are referenced to in the amended complaint. *See Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (holding that courts may consider "matters incorporated by reference or integral to the claim"). RCFC 9(k) requires that, in contract dispute cases, a party must either describe the relevant contract provisions or annex a copy of the contract to the pleading. *See Terry v. United States*, 103 Fed. Cl. 645, 647 n.1 (2012) (relying on "an exhibit appended to defendant's motion containing plaintiff's concession contract").

[2] USGS is a federal agency within the Department of the Interior whose mission is to "develop new methods and tools to supply timely, relevant, and useful information about the Earth and its processes." https://www.usgs.gov/ (last visited Dec. 31, 2020); *see* 43 U.S.C. §§ 31 *et seq.*

>licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. . . . The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work . . . .

Def. App. at 5. The contract also incorporated by reference FAR 52.236-11, Use and Possession Prior to Completion, which provides, in relevant part, that "the Contracting Officer shall furnish the Contractor a list of items of work remaining to be performed or corrected on those portions of the work that the Government intends to take possession of or use [, but t]he Government's possession or use shall not be deemed an acceptance of any work under the contract." Def. App. at 5. Additionally, the contract incorporated by reference FAR 52.243-5, Changes and Changed Conditions ("Changes clause"), which requires the contracting officer to make an equitable adjustment to the contract when the contracting officer "in writing, orders changes in the drawings and specifications within the general scope of the contract." Def. App. at 5.

### B. Sarro's Performance Of The Contract

In December 2016, the CO directed Sarro to obtain a permit from the City before installing the generator. Am. Compl. ¶ 21. On December 2, 2016, Sarro, through its local subcontractor, Kirby Electric, LLC, applied for an "over the counter" permit. *Id.* ¶ 33; *see* ECF No. 27-1 ("Pl. Resp. App.") at 6. The permit application included a disclaimer that "[t]he granting of a permit does not presume to give authority to violate or cancel the provisions of any other state or local law regulating construction or the performance of construction." Pl. Resp. Br. at 6.

Three days later, on December 5, 2016, the City issued Permit No. BP-16-02063 (the "2016 Permit"). Am. Compl. ¶ 34. The 2016 Permit provided that it was "over the counter" and included an acknowledgment that the contractor "agree[s] to comply with all applicable codes of the City of Flagstaff and the State of Arizona . . . [and allows] all pertinent City personnel access [to the] property at any time deemed necessary to inspect work being done relating to this permit." Pl. Resp. App. at 9 (capitalization removed). The City never requested "any engineering drawings or specifications relating to the generator installation" during the permitting process; nor did the Agency make any such demands. Am. Compl. ¶ 34.

For the type of electrical work that Sarro needed to perform, however, it should have applied for a different permit. Def. App. at 25–27. The City requires a "commercial" permit for significant electrical projects, including, as relevant here, the permanent installation of a generator. *Id.* As part of the application process for a

- 3 -

commercial permit, the City mandates the submission of certain electrical drawings. *Id.* at 27. However, this error went unnoticed by Sarro and the City and, unfortunately, was discovered only much later, as described below. *Id.* at 25; *see* Pl. Resp. App. at 35–36. There is no allegation that the Agency had any control over the City's permitting process.

On December 19, 2016, Sarro began performing the contract. Am. Compl. ¶ 39. On January 20, 2017, Sarro completed installing the generator and all necessary electrical connections. Am. Compl. ¶ 42. Throughout this time, the City inspected Sarro's work on five separate occasions but did not identify any problems with Sarro's permit or installation. *Id.* ¶¶ 43–44. On January 25, 2017, a representative from the generator manufacturer commissioned the generator and, six days later, on January 31, the City approved Sarro's work and closed the 2016 Permit. *Id.* ¶¶ 47–48; Pl. Resp. App. at 10.

Following the commissioning of the generator, USGS paid Sarro nearly the entire contract price but withheld $2,000 until Sarro completed certain "punch list" items. Am. Compl. ¶ 50. On March 17 and 27, 2017, the CO sent Sarro various punch list items for completion. *Id.* ¶¶ 51–52; Pl. Resp. App. at 20–22. On March 30, 2017, the CO sent Sarro a third punch list that included, among other things, a requirement that Sarro "provide AutoCAD As-built Construction Drawings showing details of layout, trench depth and path, location of Generator, wire and conduit specifications." Am. Compl. ¶¶ 54, 56; Pl. Resp. App. at 24–25. That same day, the CO forwarded to Sarro an email from the City, which provided the following notice:

> The city will be on site Tuesday, April 3rd at 1pm with the inspection team to determine the extent of the incomplete work performed. Per IBC and NEC, the work must be completed and we are going to revoke the building permit if necessary based on the findings. The requirements in code require a fire barrier that is breached to [sic] re-established by the contractor. Other issues may include the supporting of conduit, cable installation, labeling of electrical components and panelboards schedule updates.

*Id.* at 23. On April 3, 2017, Sarro, the USGS Technical Liaison, and a City inspector visited the USGS facility and viewed the work that Sarro had performed. Am. Compl.

¶¶ 58–59.  Following the inspection, the City inspector informed Sarro "that a significant portion of the work would have to be done all over again."  *Id.* ¶ 58.

On April 27, 2017, Sarro, the CO, the USGS Technical Liaison, and certain unnamed City officials met to discuss Sarro's work.  *Id.* ¶ 60.  During the meeting, Sarro noticed that the "City officials had electrical engineering drawings in their possession, which they refused to share with [Sarro]."  *Id.* ¶ 61.  The CO told Sarro that the government should have included the drawings in the Solicitation, but they had "not made it in."  *Id.* ¶ 62.  That same day, the City revoked the 2016 Permit.  *Id.* ¶ 63.  On May 3, 2017, the City informed the CO, through a correction notice, that the generator installation was in violation of numerous state and local ordinances and instructed that "no more work shall be done upon these premises until the above corrections have been made."  *Id.* ¶¶ 65–66; Pl. Resp. App. at 28–29.  The correction notice further required Sarro to hire an electrical engineer "to design and check all requirements, calculations, and installations" and that plans would need to be submitted to the City "prior to any work commencing related to fixes, repairs of modifications" to the project.  *Id.*  The CO emailed the correction notice to Sarro.  *Id.* at 31.  This required Sarro:

> (a) paying a much higher permit fee than Kirby had already paid; (b) complying with 2011 [National Electrical Code ("NEC")] wiring standards instead of the 2017 NEC standards that Sarro had followed and, as a result swapping the already installed 4/0 gauge wiring for thinner 3/0 gauge wiring; (c) obtaining expensive engineering drawings; and (d) paying similar, related additional expenses for work that had already been completed and accepted by the City months earlier.

Am. Compl. ¶ 68.  On December 13, 2017, the City issued Sarro, through its new local subcontractor, Nitro Electric, a commercial permit, Permit No. BP-17-02039.  Def. App. at 25.  On January 19, 2018, Sarro completed the project.  *Id.*

### C.     Sarro's CDA Claim

On April 13, 2018, Sarro submitted a certified claim to the CO, seeking an equitable adjustment in accordance with the contract's Changes clause, FAR 552.243-71, and the CDA, 41 U.S.C. § 7103, in the amount of $33,557.08.[3]  Am. Compl. ¶ 74; Def.

---

[3] The parties refer to Sarro's CDA claim as "certified."  Am. Compl. ¶ 74; Def. Mot at 2.  Indeed, Sarro noted in its CDA claim that the "FAR states that we *must* certify this claim."  Def. App. at 19 (emphasis added).  The CDA and implementing FAR provision, however, only require certification for claims over $100,000.  41 U.S.C. § 7103(b)(1); FAR 52.233-1(c), (d)(2).  Because Sarro only seeks $33,557.08, it was not required to certify its claim.

App. at 19–23.  Sarro sought "[r]eimbursement for costs associated with unilateral errors made by the City of Flagstaff and omissions, errors, discrepancies, and ambiguous drawing and specs which were not contemplated in the original contract price/bid." *Id.* at 19.  On May 10, 2018, the CO issued his final decision, denying Sarro's certified claim.  Am. Compl. ¶ 75; Def. App. at 24–28.

### D.    Procedural History

On May 6, 2019, Sarro, acting *pro se*, filed a complaint in this Court.  ECF No. 1.[4] On July 18, 2019, the case was stayed so Sarro could seek counsel.  ECF No. 9.  After obtaining counsel, on October 14, 2019, Sarro filed an amended complaint.  Am. Compl. at 1, 12.  Sarro's amended complaint contains four claims.  *Id.* at 12–16.  Sarro alleges that USGS:  (1) failed to disclose its superior knowledge regarding "the difficulties with obtaining permits from the City or the difficulties experienced by prior Agency contractors in obtaining permits from the City"; (2) breached the contract's Changes clause by requiring compliance with the City's "unreasonable" permitting requirements, which increased the costs, without making an equitable adjustment; (3) breached the contract by requiring compliance with the City's permitting requirements, which "drastically alter[ed] the quality, character, nature or type of work contemplated by the original Purchase Order," thus resulting in a cardinal change; and (4) breached the implied duty of good faith and fair dealing by not providing Sarro with "drawings and specifications [that] were required" to complete the project and not "disclos[ing] the prior difficulties encountered by other USGS contractors in obtaining permits from the City."  *Id.*  Accordingly, Sarro seeks $33,557.08 for additional costs incurred while completing the project.  *Id.* at 17.

On January 3, 2020, the government moved to dismiss the amended complaint pursuant to RCFC 12(b)(1) and 12(b)(6) for, respectively, lack of jurisdiction and failure to state a claim.  ECF No. 23 ("Def. Mot.").  On February 7, 2020, Sarro filed its response to the government's motion to dismiss.  ECF No. 27 ("Pl. Resp.").  On March 6, 2020, the government filed its reply in support of its motion to dismiss.  ECF No. 29 ("Def. Reply").  On June 9, 2020, the Court heard oral argument.  ECF No. 31.

## II.    Jurisdiction And Standard Of Review

The Tucker Act, as amended by the CDA, Pub. L. No. 95-563, 92 Stat. 2383 (1978), provides this Court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . on which a

---

[4] This case originally was assigned to Judge Bruggink, ECF No. 2, but, on February 5, 2020, was transferred to the undersigned Judge.  ECF No. 25.

decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2). "[J]urisdiction thus requires both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *see England v. Swanson Grp. v. United States*, 353 F.3d 1375, 1379 (Fed. Cir. 2004). The plaintiff "has the burden of establishing jurisdiction by a preponderance of the evidence." *Fid. & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015). Furthermore, as with any claim before the Court of Federal Claims, only the federal government is a proper defendant and "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." *Double Lion Uchet Express Trust v. United States*, 149 Fed. Cl. 415, 420 (2020) (alteration omitted) (quoting *United States v. Sherwood*, 312 U.S. 584, 588 (1941)). In the absence of subject-matter jurisdiction, the Court must dismiss the claim. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002); RCFC 12(h)(3).

To survive a motion to dismiss for failure to state a claim, the Court views the facts in the light most favorable to the plaintiff and accepts as true all *factual* allegations — but not conclusory legal assertions — contained in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). Those facts must yield a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.     The Court Lacks Jurisdiction Over Sarro's Implied Duty To Disclose Superior Knowledge Claim But Possesses Jurisdiction Over The Remaining Claims

The government, in its motion to dismiss, argues that, pursuant to RCFC 12(b)(1), this Court lacks jurisdiction to resolve the following claims because Sarro failed to present them as part of its certified claim to the CO: (1) the government's alleged breach of an implied duty to disclose superior knowledge; (2) the government's alleged breach of contract via a unilateral cardinal change; and (3) the government's alleged breach of the implied duty of good faith and fair dealing. Def. Mot. at 8–14. The Court notes that, to the extent Sarro seeks to hold the City responsible for the increased costs of the project, this Court has no jurisdiction to adjudicate such claims. *See, e.g.*, *Anderson v. United States*, 117 Fed. Cl. 330, 331 (2014) ("This court does not have jurisdiction over any claims alleged against states, localities, [or] state and local government entities . . . .").[5] Although the Court has jurisdiction over the cardinal change and good

---

[5] Nor, for that matter, does Sarro cite any legal authority that would require the government to pay for the City's wrongful acts. Accordingly, to the extent Sarro's pending amended complaint seeks to hold the City liable – or the government liable for the City's acts – Sarro's

faith and fair dealing claims, the Court agrees with the government that Sarro's CDA claim did not assert a breach of the government's implied duty to disclose superior knowledge.

Pursuant to the CDA, "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). "A claim need not be submitted in any particular form or use any particular wording . . . , but it must provide a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (internal brackets and quotation marks omitted). "This approach, which has been applied in a practical way, serves the objective of giving the contracting officer an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *Id.* at 1006.

In turn, as a prerequisite for this Court's jurisdiction, a plaintiff in this Court must assert in its operative complaint "the same claim previously presented to and denied by the contracting officer." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (quotation marks omitted). "This standard, however, does not require ridged adherence to the exact language or structure of the original administrative CDA claim." *Id.* All that is required is that the complaint arises from the "same operative facts" and seeks "essentially the same relief" as the claim presented to the contracting officer. *Id.* When the complaint, however, presents "a materially different factual or legal theory," then the complaint is different from the CDA claim. *Lee's Ford Dock, Inc. v. Sec'y of the Army*, 865 F.3d 1361, 1369 (Fed. Cir. 2017) (emphasis added) (quotation marks omitted); *see also K-Con*, 778 F.3d at 1005 ("Our longstanding demand that a claim adequately specify both the amount sought and the basis for the request implies that, at least for present purposes, we should treat requests as involving separate claims if they *either* request different remedies (whether monetary or non-monetary) or assert grounds that are materially different from each other factually or legally." (emphasis in original)). In sum, "the claim before the court [in the complaint] cannot be said to arise from the same operative facts [in the CDA claim] unless it is clear that the claim presented to the contracting officer was specific enough to give the officer notice of the basis of the claim and allow him to make an informed judgment about it." *Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 612 (2014).

In its certified claim, Sarro asserted, among other things, that "[n]one of the specs identified an NEC version . . . [,but t]he City of Flagstaff then required us to pay a

---

amended complaint is dismissed under RCFC 12(b)(1) and 12(b)(6), respectively, for lack of jurisdiction or failure to state a claim upon which relief may be granted.

much higher permitting fee well after the project had been completed and required [Sarro] to change out the gauge of wire to meet the 2011 NEC standards instead of the 2017 NEC standards." Def. App. at 20.  Sarro further claimed that "[t]here were no specific references in the original SOWs identifying which version of the NEC applied to this work or any other Code requirement, again leading to confusion and the added costs." *Id.* at 21.  Sarro sought $33,557.08 for its uncompensated costs arising from the unforeseen changes to the project that Sarro alleges were caused by the government.  *Id.* at 23.  Sarro also claimed that "[c]lear and precise drawing and specs were not disclosed in the specifications or general conditions provided in bid documents." *Id.* at 20.  These claims are almost identical to factual allegations contained in Sarro's amended complaint filed in this Court, seeking damages for a cardinal change and for the breach of the implied duty of good faith and fair dealing.  *See* Am. Compl. ¶¶ 101–10.

The CO, in his final decision, acknowledged that Sarro sought reimbursement because "the scope of work did not identify the version of NEC or any other Code requirements that applied to the work" and for costs associated with "draw[ing] the necessary engineered drawings." Def. App. at 26.  The CO also clearly understood Sarro's claim as holding the federal government – and not just the City – responsible for Sarro's additional costs.  This is evident from the CO's conclusion that "USGS *disagrees the Federal Government should be responsible* for any costs the Contractor may have incurred for complying with the City's building permit or of complying with any code applicable to the work required under the Contract."  *Id.* (emphasis added).

The government urges dismissal because Sarro's certified claim sought an equitable adjustment as the remedy for unforeseen additional costs caused by the government but now proceeds under various breach-of-contract theories.  *See* Def. Mot. at 11–13.  But such a legal distinction, *standing alone*, is not dispositive.  While Sarro "augments the legal theories underlying its claim[s] . . . it does not change the essence of [those] claim[s]." *Cerebonics, Inc. v. United States*, 13 Cl. Ct. 415, 419 (1987); *see M.A. DeAtley Const., Inc. v. United States*, 75 Fed. Cl. 575, 578–80 (2007) (holding that plaintiff could assert breach of contract and breach of good faith claims in complaint based on same operative facts presented in claim to contracting officer although the latter did not identify specific legal arguments).  In essence, the Court holds here – in the language of the United States Court of Appeals for the Federal Circuit's *K-Con* decision – that the legal theory distinction the government highlights is not material in light of the operative facts.  The operative factual bases that give rise to Sarro's claims in the amended complaint are – with one notable exception discussed below – the same as those contained in the CDA claim.  Sarro's requested monetary award of $33,557.08, representing its alleged additional costs, is also identical to what Sarro sought in its CDA claim submitted to, and denied by, the CO.

Because the breach of contract and implied duty of good faith and fair dealing claims in Sarro's amended complaint arise from the same facts and request the same relief contained in Sarro's certified claim to the CO, they are properly before this Court. *See Scott Timber Co.*, 333 F.3d at 1365; *see also Kansas City Power & Light Co. v. United States*, 124 Fed. Cl. 620, 630 (2016) (holding that "it is clear that irrespective of the way in which the counts are captioned . . . both plaintiff's certified claim and . . . the complaint are based on the same underlying theory").[6]

In contrast, Sarro's claim that the government failed to disclose superior knowledge falls outside this Court's jurisdiction. As the Federal Circuit has explained, "[t]he superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to performance." *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000). The nature of a superior knowledge claim naturally focuses on "*what* the government [knew] . . . and *when* they knew it." *Laidlaw Envtl. Servs. (GS), Inc. v. United States*, 43 Fed. Cl. 44, 50 (1999) (emphasis in original). In that regard, Sarro's amended complaint does just that, alleging as follows:

- Sarro was not aware of the difficulties in obtaining permits from the City[;]
- USGS knew that Sarro was not aware of the difficulties it could face in obtaining a permit from the City[;]
- [N]either the [CO] nor anyone else working for the Agency provided information regarding the permit difficulties to Sarro at any time before the generator was installed[;]
- Sarro was misled to its detriment by the nondisclosure.

Am. Compl. ¶¶ 83–88. The fatal jurisdictional flaw inherent in Sarro's superior knowledge claim before this Court, however, is that such allegations are entirely absent from the CDA claim submitted to the CO. *See Laidlaw*, 43 Fed. Cl. at 50; *see also Manuel Bros., Inc, v. United States*, 55 Fed. Cl. 8, 33–34 (2002) (finding jurisdiction over superior knowledge claim where plaintiff in the certified claim "did discuss the defendant's knowledge of the conditions of the soil and wrote about how the defendant allegedly withheld that knowledge").

---

[6] This represents only a determination that these counts do not suffer from a jurisdictional defect, but that does not mean that the claims survive the government's motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim, which is discussed *infra*, Section IV.

In Sarro's claim submitted to the CO, Sarro focuses almost entirely upon the behavior of the City, arguing at length that "[t]he City of Flagstaff failed to properly handle its own permit process." Def. App. at 19–20. Sarro repeatedly alleged that *the City* failed to inform Sarro about the wiring requirements during construction and only raised the permitting issue after Sarro's completion of the project. *Id.* Only in the last line of the four-paragraph claim does Sarro make a bare mention of the government's knowledge, alleging that, as "[the CO] well know[s] . . . . you have encountered many problems with the City of Flagstaff on most of your contracts. This case is not an exception." *Id.* at 20 (ellipses in original). Sarro agrees that this lone reference served as the basis for its superior knowledge claim in its amended complaint. Pl. Resp. at 10. The Court, however, cannot discern how any "reasonable person could have inferred" that Sarro was alleging that USGS violated its duty to disclose superior knowledge about its alleged history of permitting issues with the City based on that lone reference. *See Laidlaw*, 43 Fed. Cl. at 51; *Affiliated Constr. Grp.*, 115 Fed. Cl. at 613–14 (noting that "the claim as presented failed to provide a clear and unequivocal statement that disclosed the basis . . . of the claim" (alteration in original and internal quotation marks omitted)).

Nowhere in the certified CDA claim did Sarro allege that USGS knew, prior to Sarro bidding on the contract, that the City had a history of being uncooperative in *permitting* matters; nor did Sarro even allude to USGS's alleged failure to disclose such information or how such a failure damaged Sarro. *See Canpro Inv. Ltd. v. United States*, 130 Fed. Cl. 320, 336 (2017) ("Nowhere in its certified claim did [plaintiff] contend that the [government] knew, during lease negotiations, [the information], nor did [plaintiff] allude to any failure of the [government] to disclose that information during lease negotiations."). Likewise, the CO's final decision denying Sarro's claim does not make any reference to USGS's alleged "many problems with the City of Flagstaff on most of [its] contracts." Def. App. at 20. This is further evidence that Sarro did not "clearly" place the CO on notice as to the relevant operative facts upon which Sarro, for the first time before this Court, frames a superior knowledge claim against the government.

Sarro further asserts that the CO was on notice as to the superior knowledge claim because Sarro's transmittal email to the CO provided as follows: "I *believe* you have had other problems dealing with the City of Flagstaff and can possibly understand how the City's mishandling of the process increased the costs." Pl. Resp. App. at 1 (emphasis added). This excerpt is not from the claim itself, however, and Sarro has not referred to any caselaw in which a court or board of contract appeals has assumed jurisdiction over a complaint based on materials presented to a contracting officer outside of the certified claim. Moreover, this statement also fails to put the CO on notice of the critical point that USGS allegedly withheld such knowledge from Sarro

prior to its bidding on the contract. Sarro's assertion that a government official *might* understand how or why the City (allegedly) mishandled its permitting process is not the same thing as claiming that the government is responsible for the City's action due to a failure to disclose specific information. In sum, Sarro's superior knowledge claim currently before this Court in the amended complaint was not presented to the CO for decision in Sarro's certified claim and, thus, dismissal of the superior knowledge count, for lack of jurisdiction, is warranted.

For these same reasons, the Court also must dismiss Sarro's similarly worded allegation contained in its amended complaint that the government breached its duty of good faith and failing dealing by failing "to disclose the prior difficulties encountered by other USGS contractors in obtaining permits from the City." Am. Compl. ¶ 111. This assertion is simply a restatement of Sarro's superior knowledge claim under a different heading. *See Planate Mgmt. Grp., LLC v. United States,* 139 Fed. Cl. 61, 73 (2018) ("Two or more counts in a complaint may be merged when they contain the same factual allegations and request the same relief."); *Aptus Co. v. United States*, 61 Fed. Cl. 638, 646 (2004) (holding that asserting "duplicative and redundant statement[s]" under different legal claims "does not alter [their] nature").

### IV. The Court Dismisses Sarro's Three Remaining Claims For Failure State A Claim

The government, in its motion to dismiss, further contends that all of Sarro's claims fail to state a claim as a matter of law and, thus, should be dismissed pursuant to RCFC 12(b)(6). Def. Mot. at 17–27. Because this Court already has concluded that Sarro's superior knowledge claim must be dismissed for lack of subject-matter jurisdiction, this Court will not consider the government's arguments as to that claim. *See Laidlaw*, 43 Fed. Cl. at 51. Regarding the remaining claims, each of which is addressed below, the Court agrees with the government that pursuant to RCFC 12(b)(6), Sarro has failed to allege claims as a matter of law.

#### A. Sarro's Breach Of Contract And Cardinal Change Claims

At the motion to dismiss stage of a proceeding, a complaint's claim for breach of contract "requires two components: (1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." *Call Henry, Inc. v. United States*, 855 F.3d 1348, 1354 (Fed. Cir. 2017) (quotation omitted). "In making this assessment, the court must interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). "Contract interpretation begins with the language of the written

agreement," *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003), which, when unambiguous, "must be given [its] plain and ordinary meaning." *McAbee Const., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (quotation omitted); *see ACLR, LLC v. United States*, 147 Fed. Cl. 548, 557 (2020).

"A cardinal change is a breach that occurs when the Government effects a change in the work so drastic that it effectively requires the contractor to perform duties materially different from those in the original bargain." *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007). Because each "contractual relationship is unique, . . . the contractor must [allege and] prove specific facts in support of its allegation of a cardinal change." *Keeter Trading Co., Inc. v. United States*, 79 Fed. Cl. 243, 260 (2007); *see Becho, Inc. v. United States*, 47 Fed. Cl. 595, 601 (2000) (identifying relevant factors).

Sarro's amended complaint alleges that USGS breached the contract's Changes clause by ordering compliance with the City's permitting and subsequent new installation requirements without providing an equitable adjustment. Am. Compl. ¶¶ 89–100. Sarro also claims that USGS breached its contract with Sarro by ordering compliance with the City's permitting and subsequent new installation requirements, which, in Sarro's view, constituted a drastic alteration from the originally contemplated work in the purchase order, resulting in a cardinal change. *Id.* ¶¶ 101–06. Under either claim, Sarro is seeking the same $33,557.08 for the additional project costs; no more. *Id.* at 17. Accordingly, although styled as two separate claims, both raise the identical question – did the Agency order a *change* from the originally contemplated, contractual SOW for which Sarro must be compensated?[7]

Generally, a firm-fixed-price contract "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss." FAR 16.202-1; *RCF Info. Sys., Inc. v. United States*, 139 Fed. Cl. 729, 735 (2018). The language of the contract, on its face, appears all but dispositive: pursuant to the P&R clause, Sarro clearly assumed "responsibl[ity] for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work" all "without additional expense to the Government." FAR 52.236-7; Def. App. at 5. The Federal Circuit, the decisions of which are binding on this Court, confronted a similar issue in *Bell/Heery v. United States*, 739 F.3d 1324 (Fed. Cir. 2014). In *Bell/Heery*, the contractor alleged that the government had violated the contract's Changes clause by not authorizing an equitable adjustment for the increased costs related to "the onerous, unreasonable and overzealous [state permitting] official."

---

[7] During oral argument, the Court raised this issue and counsel for Sarro essentially conceded that these two counts merge into one claim. ECF No. 33 at 5–6, 63.

*Id.* at 1334.  The Federal Circuit affirmed the dismissal of the breach of contract claim for failure to state a claim on the grounds that the P&R Clause "unequivocally assigns *all* of the risk for complying with the permitting requirements to [the contractor] 'without additional expense to the Government.'"  *Id.* (quoting FAR 52.236-7) (emphasis in original); *see also L.W. Matteson, Inc. v. United States*, 61 Fed. Cl. 296, 308–14, (2004) (broadly interpreting a contractor's liability under a contract's P&R clause).

While the Federal Circuit acknowledged that the literal terms of the P&R clause are not always dispositive of a contractor's responsibility, that clause's effect may be mitigated only where there are "other contractual provisions that *specifically* limit the scope of the contractor's obligations for permitting requirements."  *Bell/Heery*, 739 F.3d at 1331 (emphasis added); *see, e.g.*, *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1369 (Fed. Cir. 2005) ("Our precedent establishes as a principle of contract interpretation that a specific contract provision will control over a general contract provision.").  For example, a different clause may shift financial responsibility to the government for federal regulations promulgated after the award of the contract, *see Hills Materials Co. v. Rice*, 982 F.2d 514, 516–17 (Fed. Cir. 1992) (construing FAR 52.236-13(b)(2)), or may impose a duty on the government to intercede with local permitting authorities on behalf of the contractor during the construction process.  *See Bell/Heery*, 739 F.3d at 1331–33.  In its amended complaint, however, Sarro fails to identify any specific contractual provision that limits the scope of Sarro's responsibilities and related liability under the P&R clause.  *See* Am. Compl. ¶¶ 89–100.

Indeed, Sarro only asserts that the contract "gave Sarro the discretion on how to perform the work."  *Id.* ¶ 91; *see* Pl. Resp. at 16.  *First*, Sarro does not direct the Court to any language in the contract that purportedly provides this "discretion."  *Second*, and more critically, notwithstanding any generalized discretion that the contract may have afforded Sarro in determining how to perform the work, the P&R clause specifically placed on Sarro the burden to comply with state and local permitting laws.  Sarro nowhere explains how generalized discretion to perform work may be invoked to avoid its responsibilities under the P&R clause.  Moreover, Sarro does not allege that it originally obtained the correct permit; nor does Sarro claim that its work complied with the state and local regulations.  Sarro only argues that "the City [did] not follow[] its own commercial permit requirements in issuing [the 2016 Permit]."  Am. Compl. ¶ 64.  But regardless of whether any alleged error in the issuance of the "over the counter" permit – instead of the "commercial" permit – was the City's or Sarro's, the contract clearly and unambiguously allocated the risk of failing to comply with permitting requirements to Sarro "without additional expense to the Government."  FAR 52.236-7.  More significantly still, nothing makes the putative error – if there was one – the government's responsibility.

There is one point that gives this Court pause. "When, as here, a contract is silent on the time limit of its term, it is established that the term is ordinarily effective for 'a reasonable time.'" *Sanchez v. Dep't of Veterans Affairs*, 949 F.3d 734, 736 (Fed. Cir. 2020) (quoting *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441 (2015)). Reasonableness "is determined based on the circumstances" surrounding a particular contract. *Id.* A reasonable approach to the P&R clause suggests that there must be some endpoint following the completion of the contract at which time a contractor is no longer responsible for issues that arise with a permit and, at such point, the burden of any additional costs shifts to the government. For example, the Court does not believe that the government could hold Sarro responsible in a case where the City revokes the permit ten years after the completion of the project and after the government's acceptance of the work. *Bell/Heery* is uninstructive on this point (as applied to the facts alleged in Sarro's amended complaint), as that case concerned additional costs incurred by the contractor based on permitting issues in the pre-construction stage and during construction, well before the government accepted the work. 739 F.3d at 1328–29.

In this case, Sarro largely had completed the installation of the generator and the government paid Sarro the entire balance minus $2,000. Am. Compl. ¶¶ 47–50. Sarro never alleges, however, that the government engaged in final acceptance of the project at issue.[8] *See* FAR 52.236-11 ("The Government's possession or use shall not be deemed an acceptance of any work under the contract."). Moreover, Sarro admittedly was still working on the project in the form of the punch list. *See* Am. Compl. ¶¶ 50–56. Accordingly, the Court finds that, given the facts alleged in the amended complaint, the P&R clause should be read as allocating the permit (and associated cost) risks here to Sarro, according to that clause's plain meaning.[9]

The government makes much of the fact that Sarro "fails to allege that the [CO] ordered any changes, let alone ordered them in writing." Def. Mot. at 20. But that is beside the point. Even had the CO ordered in writing that Sarro correct every violation in the City's correction notice, such an order would not have triggered the Changes

---

[8] Plaintiff *does* allege that the "work . . . had already been completed and accepted *by the City* months earlier," Am. Compl. ¶ 68 (emphasis added), but never alleges that *the Agency* engaged in final acceptance under FAR 52.236-11.

[9] The Court notes that only in the P&R clause's last sentence is there an explicit mention of a temporal limitation on liability: "The Contractor shall also be responsible for all materials delivered and work performed *until completion and acceptance of the entire work* . . . ." FAR 52.236-7 (emphasis added). Whether the term "work performed" covers the P&R clause's earlier reference to permitting requirements, so as to impose a specific durational limitation, is a question that the Court need not answer today because, in either event, Sarro does not allege that the government engaged in final acceptance of the work at issue.

clause.  Rather, any such direction would have merely been an order to comply with the terms of the P&R Clause, which squarely required Sarro's compliance with all state and local permitting laws.  *See Agility Def. & Gov't Servs., Inc. v. United States*, 115 Fed. Cl. 247, 251 (2014) ("[W]hen the Government merely insists on performance in compliance with the contract specifications, no adjustment is warranted.").  While the Court sympathizes with Sarro's situation generally, Sarro, simply put, has not stated a claim for breach of contract against the government.  The contract assigned to Sarro the duty and risk of local permitting compliance, and it has not identified any specific contractual provision that limited that duty or otherwise shifted the risk of non-compliance to the government.

Having concluded that Sarro has failed to allege sufficient facts which, if true, demonstrate that the government ordered a change beyond what Sarro was required to perform under the contract, the Court also must dismiss Sarro's cardinal change claim for failure to state a claim.  USGS did not order a change or modification to the contract; nor did the government otherwise order Sarro to perform work that was not contemplated by the parties.  Indeed, at most, USGS ordered only that Sarro comply with the contract's P&R Clause.  Absent factual allegations that, if true, would demonstrate that USGS forced Sarro to incur any costs for work beyond its contractual obligations, the Court *a fortiori* cannot conclude that USGS so drastically altered the terms of the contract that a cardinal change resulted.  Put differently, in the absence of any change, there cannot be a cardinal one.  *See Bell/Heery*, 739 F.3d at 1335.

### B. Sarro's Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing

"Every contract, including one with the federal government, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement."  *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1106 (2020).  This includes "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract."  *Id.* (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)); *see Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 596 (2013) ("[A] party generally must allege some kind of subterfuge or evasion . . . or interference with or failure to cooperate in the other party's performance." (brackets and internal quotation marks omitted)).  "[A]n act will not be found to violate the duty (which is implicit in the contract) if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision."  *Metcalf Constr. Co., Inc. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014).

Sarro alleges that "the Agency knew that drawings and specifications were required but never provided them to Sarro or any other offeror as part of the Solicitation process." Am. Compl. ¶ 110.[10] This single sentence, however, fails to state a claim for breach of the implied duty of good faith and fair dealing.

*First*, the single sentence fails to contain sufficient facts to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Because Sarro has not included any factual allegations explaining this conclusory statement, the Court is unable to determine how the "drawings and specifications" that Sarro believes the Agency failed to provide impacted the eventual performance of the contract. *See Scogin v. United States*, 33 Fed. Cl. 285, 293 (1995) ("[T]here is no duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his pleading[.]" (quotations omitted)). Sarro never explains the connection between the drawings and specifications and the damages Sarro allegedly incurred and, thus, entirely omits facts demonstrating either breach or a causal link to the alleged increased costs incurred. This is a classic *Twombly/Iqbal* problem. Indeed, in responding to the government's motion to dismiss, Sarro appears to have all but abandoned this particular claim contained in the amended complaint. *See* Pl. Resp. at 23–24 (containing single reference to "drawings and specifications"). A party's failure to raise an argument in an opening or responsive brief constitutes waiver. *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002) (argument raised for first time in reply is waived); *see also Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018) (quoting *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F.Supp.2d 1125, 1132 (C.D. Cal. 2011), for the proposition that "in most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

*Second*, to the extent that Sarro argues that "nothing in the Purchase Order said that the review and approval were conditions precedent to the issuance of a permit," Pl. Resp. at 24, the contract demonstrates Sarro is wrong. The contract, in the SOW, expressly provided that the City "requires review and approval of all drawings/specs." Def. App. at 15. Moreover, as already explained, the P&R clause required Sarro to

---

[10] Sarro's amended complaint also alleges that USGS violated this implied duty by "fail[ing] to disclose the prior difficulties encountered by other USGS contractors in obtaining permits from the City." Am. Compl. ¶ 111. But this claim fails for the same reason as Sarro's superior knowledge claim, which Sarro did not include in its certified CDA claim to the CO, and, as such, is dismissed for lack of jurisdiction. *See, supra*, Section III. Simply put, Sarro never placed the CO on notice that Sarro was seeking damages due the government's alleged failure to disclose certain information.

comply with any and all of the City's permitting requirements "without additional expense to the Government."  FAR 52.236-7.[11]

In sum, given the facts Sarro alleges in the amended complaint, and in light of the contractual requirements, Sarro lacks any viable claim as a matter of law.

* * * * *

The Court acknowledges that Sarro may view this result as harsh, given that it may have been forced to incur additional costs as a result of the City's actions that Sarro did not and *perhaps* could not have easily anticipated.  The Court further observes that the government may come to regret its position here, should contractors get the message that they should price into their services the risk of overly onerous or even unreasonable local permitting requirements.  That said, this Court cannot rewrite the P&R clause to reallocate risk to the government merely because it has deeper pockets.

### CONCLUSION

For all the above reasons, the Court **GRANTS** the government's motion to dismiss Plaintiff's amended complaint in its entirety.  The first count is dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1), while the three remaining counts are dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.  Accordingly, the Clerk shall enter **JUDGMENT** for Defendant.

**IT IS SO ORDERED.**

s/Matthew H. Solomson<br>
Matthew H. Solomson<br>
Judge

---

[11] To the extent that Sarro complains about its difficulties with the City's review process, that is not a claim against the government.  As explained, *supra*, any claim against the City is beyond this Court's jurisdiction and is subject to dismissal pursuant to RCFC 12(b)(1).  To the extent Sarro claims that the government should be held liable for the City's actions, Sarro does not cite any contractual provision supporting the imposition of such liability, and such a claim is dismissed pursuant to RCFC 12(b)(6).